IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| JEANNETTE ALVARDO RIVERA, et. al., <br><br> **Plaintiffs** <br><br> **v.** <br><br><br> ORIENTAL BANK & TRUST, et. al., <br><br> **Defendants** | **CIVIL NO.** 11-1458 (JAG) |

**OPINION AND ORDER**

Magistrate Judge Bruce McGiverin drafted a report recommending that the Federal Deposit Insurance Company's ("FDIC") motion to dismiss be denied. The FDIC presented an opposition to the Magistrate's Report, which is presently before the Court. For the reasons outlined below, the Report and Recommendation is **ADOPTED** and the FDIC's motion to dismiss is **DENIED**.

**STANDARDS**

In <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544 (2007), the Supreme Court held that to survive a motion to dismiss under Rule 12(b)(6), a complaint must allege "a plausible entitlement to relief." <u>Rodríguez-Ortiz v. Margo Caribe, Inc.</u>, 490 F.3d 92,

95-96 (1st Cir. 2007) (quoting Twombly, 550 U.S. at 559). While Twombly does not require the heightened fact pleading of specifics, it does require enough facts to "nudge [plaintiff] claims across the line from conceivable to plausible." Twombly, 550 U.S. at 570. Accordingly, in order to avoid dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient "to raise a right to relief above the speculative level." Id. at 555.

In Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), the Supreme Court upheld Twombly and clarified the principles that must guide this Court's assessment of the adequacy of the plaintiff's pleadings when evaluating whether or not a complaint can survive a Rule 12(b)(6) motion. See Iqbal, 129 S.Ct. at 1949-50. The court must identify any conclusory allegations in the complaint as such allegations are not entitled to an assumption of truth. Id. at 1949. "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555). A claim has facial plausibility when the pleaded facts allow the court to reasonably infer that the defendant is liable for the specific misconduct alleged. Id. at 1949, 1952. Such inferences must be more than a sheer possibility and at least as plausible as any

obvious alternative explanation. Id. at 1949, 1951. Plausibility is a context-specific determination that requires the court to draw on its judicial experience and common sense. Id. at 1950.

In a recent case, Ocasio-Hernández v. Fortuño Burset, 640 F.3d 1 (1st Cir. 2011), the First Circuit analyzed and distilled several principles from the Supreme Court decisions in Twombly and Iqbal. It thus boiled down the inquiry a Court must perform while resolving a motion to dismiss under Fed.R.Civ.Proc. 12(b)(6) to a two-pronged approach. The first step involves the process of identifying and disregarding the threadbare recitals of the elements of a cause of action and/or the legal conclusions disguised as fact. Ocasio-Hernández, 640 F.3d at 12. The second step involves treating the non-conclusory factual allegations as true, even if seemingly incredible, and determine if those "combined allegations, taken as true, state a plausible and not merely a conceivable, case for relief." Id. (quoting Sepúlveda-Villarini v. Dep't of Educ. of P.R., 628 F.3d 25, 29 (1st Cir. 2010)).

The First Circuit warned that even if determining the plausibility of a claim "requires the reviewing court to draw on its judicial experience and common sense," it must not attempt to forecast the likelihood of success even if recovery is remote and unlikely. Id. (quoting Iqbal, 129 S. Ct. at 1950) (other citations omitted). It further stated that, "[t]he relevant

inquiry focuses on the reasonableness of the inference of liability that the plaintiff is asking the Court to draw from the facts alleged in the complaint. Id. at 13.

## BACKGROUND

A group of former employees (collectively, "Plaintiffs") sued Oriental Bank & Trust ("Oriental") in the Puerto Rico Court of First Instance alleging unjust dismissal in violation of Law 80 of May 30, 1976. 29 L.P.R.A. § 185a *et seq*. ("Law 80"). The FDIC intervened in the case, acting as receiver for Eurobank, and removed the case to federal court.

The FDIC filed its motion to dismiss on December 7, 2007. (Docket No. 20). The Magistrate Judge issued his Report and Recommendation on August 8, 2012. (Docket No. 37). Magistrate McGiverin concluded that Plaintiffs' claims are not subject to mandatory receivership claims process because they arise out of Oriental's post-acquisition acts and that that the FDIC could not have retained the liability related to Plaintiffs Law 80 claims against Oriental because these claims did not accrue until after the asset sale to Oriental. The Report and Recommendation further states that the FDIC's ability to retain certain liabilities is only relevant if Plaintiffs' claims had already accrued prior to Oriental's purchase of Eurobank's assets.

The complaint alleges that Plaintiffs were employed by Oriental, held various titles, and earned salaries in 2009. The complaint further states that Plaintiffs were employed for an undetermined term, which was terminated in 2010. According to the complaint, the terminations were not conducted due to seniority and Oriental never paid severance to Plaintiffs. The complaint also states that Oriental acquired the assets of Eurobank and used the same branches, work force, supervisory personnel, equipment, and machinery as Eurobank.

The parties filed a joint status report (Docket No. 11) in order to better apprise the Court of status of the proceedings. In said filing, the parties stated that on April 30, 2010, the Office of the Commissioner of Financial Institutions of the Commonwealth of Puerto Rico closed Eurobank, Plaintiffs' prior employer, because it was insolvent and appointed the FDIC to serve as its receiver. The FDIC terminated all of Eurobank's employees and notified them of their right to submit any claims they might have to the FDIC-R under the statutory administrative claims process established by the Financial Institutions Reform, Recovery and Enforcement Act of 1989, ("FIRREA"), 12 U.S.C. §1821(d)(3)-(13). The FDIC and Oriental entered into a Purchase and Assumption Agreement on the same date. (Docket No. 11; Docket No. 1-1, p. 37-64, Docket No. 1-2, and Docket No. 1-3 p. 1-62). Oriental assumed "substantially all" of Eurobank's

deposits and acquired certain Eurobank assets, but did not acquire Eurobank's employee-related liabilities.

## ANALYSIS

In its motion to dismiss, the FDIC argued that dismissal was merited because (1) Plaintiffs' employment ended due to the insolvency and failure of Eurobank, so Plaintiffs were – by definition – terminated for "just cause" under Law 80; thus, they have no claim for Law 80 relief; (2) this Court lacks jurisdiction over these claims due to the failure of Plaintiffs to comply with the mandatory claims process applicable to "any claim of [Plaintiffs] for services performed before the appointment" of FDIC as receiver for Eurobank, 12 U.S.C. § 1821(e)(7); compliance with the claims process is required for this Court to have jurisdiction over these claims; and (3) in order to facilitate failed bank transactions, the FDIC has explicit statutory authority under federal law to transfer -- or retain -- any asset or liability of a failed bank. This authority is not -- and cannot be -- superseded by Law 80.

Plaintiffs argued in their opposition to the FDIC's motion to dismiss, that dismissal was improper because FIRREA's administrative claim process does not apply to this case due to the fact that they are only seeking damages against Oriental. Thus, because neither the FDIC nor Eurobank took place in the

terminations, there is no possible way that the requirements outlined in the FIRREA are applicable.

The Magistrate Judge found Plaintiffs argument regarding this Court's subject matter jurisdiction to be unpersuasive because Plaintiffs were attacking Oriental's post acquisition behavior. The Magistrate also concluded that it would be untimely to dismiss because whether or not Oriental was liable under Law 80 was factual in nature and would be better resolved at the summary judgment stage.

It is evidently clear that much of this dispute concerns whether or not Oriental was Eurobank's successor employer under Law 80.

Puerto Rico Law 80 prohibits dismissal of employees without just cause. <u>Hoyos v. Telecorp Communications, Inc.</u>, 488 F.3d 1, 6 (1st Cir. 2007). Under Law 80, once an employee proves that he was discharged and alleges that his dismissal was unjustified, the employer must establish by a preponderance of the evidence that the discharge was for good cause. 29 L.P.R.A. § 185a provides the method for calculating severance pay for discharge from employment without just cause. This section provides:

> Notwithstanding what is provided in the first paragraph of this section, the mere fact that an employee renders services under a fixed term contract, in itself, shall not have the automatic effect of depriving him/her of the protection of §§ 185a–185m of this tittle, if practice and circumstances involved or other evidence in the

> contracting were of such a nature that they tend to indicate the creation of an expectation of continuity in employment, or appears to be a bona fide employment contract for an indefinite period of time. In these cases, the employees thus affected shall be deemed to have been contracted for an unspecific period of time. Except when it concerns employees contracted for a certain bonafide term, or for a certain bonafide project, every separation, termination, or dismissal of employees contracted for a certain term, or a certain project or job, or the non-renewal of his/her contract, shall be presumed to constitute an unjust dismissal governed by §§ 185a–185m of this title. Id.

29 L.P.R.A. § 185b(d) states that the "[f]ull, temporary or partial closing of the operations of the establishment. Provided, [t]hat, in those cases in which the company has more than one office, factory, branch or plant, the total, temporary or partial closing of any of these establishments will constitute just cause for dismissal pursuant to the Article. Thus, the closing of operations constitutes just cause for dismissal and does not require the payment of severance.

29 L.P .R.A. § 185f states:

> In the case of transfer of a going business, if the new acquirer continues to use the services of the employees who were working with the former owner, such employees shall be credited with the time they have worked in the basis under former owners. In the event that the new acquirer chooses not to continue with the services of all or any of the employees and hence does not become their employer, the former employer shall be liable for the compensation provided herein, and the purchaser shall retain the corresponding amount from the selling price stipulated with respect to the business. In case

>he discharges them without good cause after the transfer, the new owner shall be liable for any benefit which may accrue under §§ 185a-185m of this title to the employee laid off, there being established also a lien on the business sold, to answer for the amount of the claim.

The successor employer doctrine "requires, at a minimum, a continuity in the identity of the business before and after the change." Acosta-Ramirez v. Banco Popular, et al., 2012 WL 1123602, *8 (D.P.R. 2012) (citing Adventist Health v. Mercado, 171 D.P.R. 255 (2007)). "To determine if a company is the successor to another, one must focus on whether the new company has "acquired substantial assets of its predecessor and continued, without interruption or substantial change, the predecessor's business operations." Acosta-Ramirez, 2012 WL 1123602, *8 (citing Fall River Dyeing & Finishing Corp. v. NLRB, 482 U.S. 27, 43 (1986); Asseo v. Centro Médico del Turabo, Inc., 900 F.2d 445, 451 (1st Cir. 1990)).

The record before the Court demonstrates that Eurobank was declared insolvent, involuntarily liquidated, and subsequently closed. The record also readily shows that the FDIC, acting as receiver, dismissed Plaintiffs. (Docket No. 11). The record also states that after Plaintiffs were dismissed by the FDIC, they were then hired by Oriental, albeit on the same day that the FDIC fired Plaintiffs. Thus, the Court understands that when Oriental purchased Eurobank's assets from the FDIC, Eurobank had

ceased doing business. The Court understands that Plaintiffs conveniently skirt this factor. Plaintiffs' motions repeatedly assert that they are only seeking relief against Oriental for its actions and that because Oriental hired Plaintiffs it is subject to severance under Law 80. However, Plaintiffs do not seem to have a clear explication as to why their claims did not accrue when they were terminated by the FDIC. (Docket No. 11). Similarly, Plaintiffs seem to avoid mentioning that although they are indeed seeking relief against Oriental their claims seek severance payment that includes Plaintiffs tenure with Eurobank. As a result, it seems clear that Plaintiffs' complaint does present questions of federal law that need to be resolved.

The fact that Eurobank was closed and its employees dismissed by the FDIC suggests that Oriental was not Eurobank's successor employer. However, the Magistrate accurately points out that the inquiry regarding successor liability is largely factual in nature and based upon the totality of the circumstances. See Fall River Dyeing & Finishing Corp., 482 U.S. 27. As a result, the Court understands that the question regarding successor liability would be better addressed at the summary judgment juncture. Moreover, even if the Court were to conclude that Oriental was not Eurobank's successor employer, the Court would still need to resolve whether or not Oriental is

liable under Law 80. Therefore, the Court believes that this determination is better made at the summary judgment phase.

The Court also notes that the FDIC has advanced a preemption argument, which the Court has not addressed. Because the Court has decided to postpone its inquiry regarding successor liability, the Court believes that the FDIC's argument regarding preemption is better addressed when the Court rules on the successor liability question and the pending motion for summary judgment. However, the Court notes that the <u>Arends v. Eurobank and Trust Co.</u>, 845 F.Supp. 60 (D.P.R. 1994), decision does not state that there are no preemption issues between Law 80 and FIRREA. Rather, the <u>Arends</u> decision only states that the Court found it unnecessary to address the issue in that case. Lastly, the Court takes notice that Plaintiffs do not dispute FDIC's argument that Plaintiffs failed to follow the administrative process required by FIRREA. Thus, if the Court were to find that Oriental was not Eurobank's successor employer, or that Plaintiffs were unable to recover from Oriental for another reason, Plaintiffs would be precluded from recovering from the FDIC due to their failure to comply with the administrative process, as set forth in 12 U.S.C. § 1821(d)(3).

## CONCLUSION

As a result of the foregoing, the Court **ADOPTS** the Magistrate's Report and Recommendation and accordingly **DENIES**

FDIC's motion to dismiss. However, should the Court conclude at the summary judgment stage that Oriental was Eurobank's successor, the Court will revisit FDIC's preemption argument.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 28th day of September, 2012.

>                                      S/ Jay A. Garcia-Gregory
>                                      JAY A. GARCIA-GREGORY
>                                      United States District Judge