IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| JEANNETTE ALVARADO-RIVERA, *et. al.*,<br><br>**Plaintiffs**<br><br>v.<br><br>ORIENTAL BANK AND TRUST, *et al.*,<br><br>**Defendant** | **CIVIL NO.** 11-1458 (JAG) |

**OPINION AND ORDER**

Pending before the Court is Oriental Bank and Trust's ("Oriental") Motion for Summary Judgment (Docket No. 30). For the reasons outlined below, summary judgment is hereby **GRANTED** in part and **DENIED** in part.

**Background**

This claim arises as a result of the demise of Eurobank Puerto Rico. On April 30, 2010, the Office of the Commissioner of Financial Institutions of the Commonwealth of Puerto Rico ("OCFI") closed Eurobank due to insolvency, and appointed the Federal Deposit Insurance Company ("FDIC") as receiver. (Docket No. 30-2). Thereafter, the FDIC and Oriental entered into a Purchase and Assumption Agreement ("the Agreement") under which Oriental acquired certain assets of the failed bank. (Docket No. 30-3). On May 3, 2010, following Oriental's acquisition of

Eurobank's assets, Jeannette Alvarado-Rivera, *et al.*, ("Plaintiffs") signed employment contracts with Oriental. (Docket No. 30-5). However, while a probationary working period was in effect, Oriental terminated most of Plaintiffs' employment contracts.[1]

---

[1] Out of all fifty nine (59) plaintiffs, fifty eight (58) signed probatinary work contracts. From these, the following eighteen (18) plaintiffs were terminated by Oriental prior to the conclusion of the Initial Probationary Period on July 30, 2010: Alfredo Amador, Roberto Carreras, Daisy Cotto, Isabel Garcia, Mercedes K. Gonzalez, Charmelyns Hernandez, Maria Laracuente, Wanda Levante, Maria D. Martinez Zengotita, Nilda Mora, Jorge Perez Grana, Salvio Rabel, Mildred Rivera, Héctor L. Rivera Rivera, Milagros Rodríguez, Luis Suau, Leopoldo Toro and Margarita Vélez. **See Docket No. 30-4 at ¶ 8.**
The remaining forty (40) plaintiffs' employment was extended until October 29, 2010: Miriam R. Aponte Sánchez, Gloria M. Cabán Cortés, Tomás R. Capestany Santiago, María del L. Carrasquillo Navarro, Sandra L. Colón Cintrón, Evelyn del Rosario Torres, María J. Fernández Rohena, Pedro J. Fernández Torres, Gladiana Y. García González, Francisco García Ramos, Aida González de León, Petra I. González Díaz, Awilda González Rivera, Carmen G. Gracia Rosado, Carlos F. Guerrero Henríquez, Jeanette M. Hall Font, Víctor M. Hernández Peña, Nancy López Cruz, Carmen E. Marrero Sánchez, Luis A. Martínez Arroyo, Magda I. Morales Muñiz, Víctor M. Ortega Morena, Samuel Pastrana Ortiz, Amarilis Pedraza Sánchez, Javier I. Pérez Suárez, Juan A. Ramos Flores, Grace Ríos Burgos, Jose A. Rivera Cruz, Janette Rodríguez Rivera, Magdalys Román Maldonado, Carlos Santaella Serrano, Mercedes Soto Burgos, Jose F. Terrada Pérez, Jose D. Tirado Sierra, Joanne M. Torres Rivera, Raquel Torres Sotomayor, María Torres Vargas, Rafael Vargas Pacheco, Lionel Vélez Delgado. **See Docket No. 30-6 (a-vv), Letters from the Department of Labor extending the Probationary Work Contracts. See also Docket No. 30-4 at ¶ 10.** The Court notes that Plaintiff Miriam Aponte Sánchez is currently an employee of Oriental and that Plaintiff Wanda I. Miranda Irizarry never became an employee of Oriental. (Docket No. 30-4 at ¶ 4 and ¶ 21).

In March 2011, Plaintiffs filed a civil complaint against Oriental before the San Juan Court of First Instance, Case No. K PE2011-1231 (808), alleging wrongful termination of employment under PR Law No. 80 of May 30, 1976, P.R. Laws Ann. tit. 29, §§ 185a-185m (1976) ("Law 80"). The FDIC, as receiver of Eurobank and interested party, filed a motion to intervene; on May 17, 2011, it removed the case to the federal court. (Docket No. 1). On June 29, 2012, Oriental filed a Motion for Summary Judgment (Docket No. 30); Plaintiffs timely filed their opposition. (Docket No. 38).

Plaintiffs claim that Oriental terminated their employment without just cause and that, as successor employer of Eurobank, it should be held responsible for Plaintiffs' severance payment, pursuant to Law 80. Plaintiffs argue that Oriental became a successor employer of Eurobank upon acquiring the latter's banking operations and, thus, the statutory severance owed to them should take into account the years they worked for both Eurobank and Oriental.

Oriental counters that they are not liable for Plaintiffs' termination of employment on the grounds that: (1) Oriental is not a successor employer of Eurobank; (2) Oriental is not the proper party to respond to Plaintiffs' claims; (3) Plaintiffs were under a probationary contract; and (4) some of the Plaintiffs signed waivers of release.

**Standard of Review**

**I. Summary Judgment**

Federal Rule of Civil Procedure 56 states, in pertinent part, that a court may grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); See also Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000).

Summary judgment is appropriate if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." See Fed.R.Civ.P. 56(c). The party moving for summary judgment bears the burden of showing the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

Once a properly supported motion has been presented before the court, the opposing party has the burden of demonstrating that a trial-worthy issue exists that would warrant the court's denial of the motion for summary judgment. For issues where the opposing party bears the ultimate burden of proof, that party cannot merely rely on the absence of competent evidence, but must affirmatively point to specific facts that demonstrate the

existence of an authentic dispute. See Suarez v. Pueblo Int'l, Inc., 229 F.3d 49 (1st Cir. 2000).

In order for a factual controversy to prevent summary judgment, the contested facts must be "material" and the dispute must be "genuine". "Material" means that a contested fact has the potential to change the outcome of the suit under governing law. The issue is "genuine" when a reasonable jury could return a verdict for the nonmoving party based on the evidence. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). It is well settled that "[t]he mere existence of a scintilla of evidence" is insufficient to defeat a properly supported motion for summary judgment." Id. at 252. It is, therefore, necessary that "a party opposing summary judgment must present definite, competent evidence to rebut the motion." Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994).

In making this assessment, the court "must view the entire record in the light most hospitable to the party opposing summary judgment, indulging in all reasonable inferences in that party's favor." Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990). The court may safely ignore "conclusory allegations, improbable inferences, and unsupported speculation." Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990).

**II. Local Rule 56**

Local Rule 56 provides, *inter alia*, that facts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule shall be deemed admitted unless properly controverted. An assertion of fact set forth in a statement of material facts shall be followed by a citation to the specific page or paragraph of identified record material supporting the assertion. The court may disregard any statement of fact not supported by a specific citation to record material properly considered on summary judgment. The court shall have no independent duty to search or consider any part of the record not specifically referenced in the parties' separate statement of facts.

Fed.R.Civ.P.56(e) "relieve[s] the district court of any responsibility to ferret through the record to discern whether any material fact is genuinely in dispute." CMI Capital Market Inc. v. González-Toro, 520 F.3d 58, 62 (1st Cir. 2008). Thus, parties cannot simply "shift the burden of organizing the evidence presented in a given case to the district court." Mariani-Colón v. Dep't of Homeland Sec., 511 F.3d 216, 219 (1st Cir. 2007). A litigant ignores these directives at their own peril: "If the party opposing summary judgment fails to comply with Local Rule 56(c), the rule permits the district court to treat the moving party's statement of facts as uncontested." Id.

**III. Law 80**

Puerto Rico's Law 80 provides the exclusive remedy for employees hired for an indeterminate period of time who are discharged without just cause. See Hoyos v. Telecorp Commc'ns, Inc., 488 F.3d 1, 6 (1st Cir. 2007). It offers relief for "[e]very employee in commerce, industry, or any other business or work place ... in which he/she works for compensation of any kind, contracted without a fixed term, who is discharged from his/her employment without just cause." P.R. Laws Ann. tit. 29 § 185a. In these cases, the law requires the employer to pay severance, in accordance with the formula provided by said statute. Id.

In contrast, an employee hired for a fixed term does not fall within Law 80's reach. See Otero-Burgos v. Inter American University, 558 F.3d 1, 8 (1st Cir. 2009). But Law 80 does cover employees hired under a fixed-period of time who have an expectation of continuity in employment. See Medina v. Adecco, 561 F.Supp.2d 162 (2008). In this respect, the law provides:

> [T]he mere fact that an employee renders services under a fixed term contract, in itself, shall not have the automatic effect of depriving him/her of the protection of §§ 185a-185m of this title, *if the practice and circumstances involved or other evidence in the contracting were of such a nature that they tend to indicate the creation of an expectation of continuity in employment,* or appears to be a bona fide employment contract for an indefinite period of time. P.R. Laws Ann. tit. 29 § 185a (emphasis added).

**CIVIL NO.** 11-1458 (JAG)                                                      8

This section refers to employees who, although hired under a fixed-term contract, had reason to believe that they would continue working for the employer. In these cases, the employee shall be considered hired for an indefinite period of time and Law 80's protection shall be applicable. Id.

Among the grounds for dismissal which constitute just cause and do not require a severance payment pursuant to the law, section 185b lists:

> (c) The employee's *repeated violations of the reasonable rules and regulations established for the operation of the establishment*, provided a written copy thereof has been opportunely furnished to the employee.
>
> (d) *Full, temporarily or partial closing of the operations of the establishment*.
>
> Provided, That in those cases in which the company has more than one office, factory, branch or plant, the full, temporary or partial closing of operations of any of these establishments shall constitute just cause for discharge pursuant to this section. P.R. Laws Ann. tit. 29 § 185b (emphasis added).

Given that Plaintiffs assert that Oriental is a successor employer of Eurobank, we must also consider section 185f, which provides, in pertinent part:

> In the case of transfer of a going business, if the new acquirer continues to use the services of the employees who were working with the former owner, such employees shall be credited with the time they have worked in the basis under former owners. In the event that the new acquirer chooses not to continue with the

>   services of all or any of the employees and hence does
>   not become their employer, the former employer shall
>   be liable for the compensation provided herein, and
>   the purchaser shall retain the corresponding amount
>   from the selling price stipulated with respect to the
>   business. In case he discharges them without good
>   cause after the transfer, the new owner shall be
>   liable for any benefit which may accrue under sections
>   183a-185l of this title to the employee laid off. P.R.
>   Laws Ann. tit. 29 § 185f.

### Discussion

The focal point of this controversy concerns whether or not Oriental was Eurobank's successor employer under Law 80.

In regards to the transfer of an ongoing business, Puerto Rico's Law 80 grants employees who are retained by the purchaser of the ongoing business the right to claim for the years worked under the former employer, in case of an unjustified discharge. However, this doctrine requires the new purchaser to be the successor employer of the former business. See Rodríguez v. Urban Brands, 167 D.P.R. 509, 516 (2006).

In Acosta-Ramirez v. Banco Popular de Puerto Rico WL 1123602 (D.P.R. March 30, 2012) the Court defined a successor employer as an employer who has acquired an already existing operation and continues those operations in a manner consistent with the previous employer. The successor doctrine requires "a continuity in the identity of the business before and after the change." Id. at 8 (citing Rodríguez, 167 D.P.R. at 516). In determining whether a company is a successor, one must focus on

whether the new company "acquired substantial assets of its predecessor and continued, without interruption of substantial change, the predecessor's business operations." Id. (citing Fall River Dyeing & Finishing Corp. v. NLRB, 482 U.S. 27, 43 (1986)).

The record demonstrates that Eurobank was declared insolvent and involuntarily liquidated by the OCFI, which, in turn, designated the FDIC as receiver of the failed bank's assets. (Docket No. 30-2). The FDIC terminated all employees, and provided them with notice of the claims process under the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), 12 U.S.C. § 1821 (d) (3)-(13). (Docket No. 11, ¶ 2). Thereafter, Oriental and the FDIC executed the Agreement (Docket No. 11 ¶ 3; Docket 30-3); at which point, Eurobank had already ceased to exist.

As part of the Agreement, the FDIC provided Oriental indemnity for claims arising out of the failed bank's liabilities. (Docket No. 30-3). The Agreement specifically provided that liabilities related to Eurobank were to remain with the FDIC and were not to be transferred to Oriental. (Docket No. 30-3). It is undisputed that Oriental did not assume responsibility of claims from Eurobank's former employees regarding their employment with Eurobank. (Docket No. 30-3). Thus, Oriental did not continue with Eurobank's business operations.

Furthermore, Eurobank's employees were terminated as a result of liquidation and the closing of the bank. The mere fact that Eurobank was closed on insolvency grounds and that the FDIC dismissed all Plaintiffs prior to being hired by Oriental, confirms that Oriental was not a successor employer of Eurobank. Since Oriental's acquisition of Eurobank's assets did not make Oriental a successor employer of Plaintiffs, Oriental is not liable for severance benefits accrued during Plaintiffs' employment with Eurobank. See <u>Arends v. Eurobank & Trust Co.</u>, 845 F. Supp. 60 (D.P.R. 1994) ("Bank that acquired substantial portion of failed bank's assets and liabilities was not liable to failed bank's former employees for severance benefits under Puerto Rico statute requiring such benefits when employees are terminated without just cause; employees' positions with failed bank were terminated when that institution was declared insolvent…"); <u>see also</u> <u>Acosta-Ramirez v. Banco Popular de Puerto Rico</u> WL 1123602 (D.P.R. March 30, 2012).

Since Oriental is not a successor employer of Eurobank and, thus, not accountable for any cause of action arising out of Plaintiffs' former employment, we now consider if Oriental terminated Plaintiffs' contracts without just cause.

**(1) Plaintiffs hired under probatory work contracts**

At the time Plaintiffs were dismissed as employees of Oriental, a probationary work contract was in effect. Oriental argues that Plaintiffs have no right under Law 80 because they were dismissed during this probationary period. Plaintiffs contest that the probationary period is null because Oriental failed to comply with the procedures established by the Puerto Rico Department of Labor and Human Resources for requesting an extension of the initial 90-day probationary work term.

Plaintiffs allege that, in conformity with the regulations of the Department of Labor and Human Resources, when an extension of the probationary period is requested, the employer should notify the employee on the same day the request is filed. However, Plaintiffs fail to support their allegations with a proper reference to the record. See D.P.R. Civ. R. 56. This Court has stressed that "failure to present a statement of disputed facts embroidered with specific citations to the record, justifies the court's deeming the facts presented in the movant's statement of undisputed facts admitted." Cosme Rosado v. Serrano Rodríguez, 360 F.3d 42, 45 (1st Cir. 2004). Accordingly, the Court finds this argument waived.

In the alternative, if the Court were to regard the probationary contract null as Plaintiffs propose, their claim would still be unwarranted, as Oriental provided Plaintiffs with sufficient notice of the requested extension. (Docket No. 30-6,

p. 2). Therefore, we consider that Oriental's actions did not injure Plaintiff's rights in this aspect. There being no genuine trial-worthy issue as to material facts, Oriental's summary judgment is granted.

**(2) Javier Perez-Suarez's Employment Termination with Oriental**

Javier Perez-Suarez ("Perez-Suarez") was hired as a temporary employee to perform a specific task for a definitive period of time. He signed two (2) temporary employment contracts with Oriental. In the first contract, Perez-Suarez acknowledged that he was being hired from November 1, 2010 to January 17, 2011. In the second contract, Perez-Suarez acknowledged that his employment would be commencing January 18, 2011 and concluding February 8, 2011. Thus, Perez-Suarez's temporary employment with Oriental terminated February 8, 2011. (Docket No. 30-1 ¶¶ 21-27; Docket 30-4 at ¶ 19; Docket 30-10)

The contracts signed by Pérez-Suarez clearly established that employment was to be temporary. In no way do we find Pérez-Suarez had reason to believe he would continue to be employed by Oriental after three months. Thus, without an expectation of continuity, Law 80 does not protect him from dismissal without a good cause. In addition, Pérez-Suarez fails to cite to the record in support of his allegations, in compliance with Local Rule 56. The Court finds that there is no genuine dispute of

material facts that precludes summary judgment and requires further proceedings. Accordingly, summary judgment is granted on this issue.

**(3) Joanne Torres-Rivera and Jannet Rodríguez-Rivera's Resignation from Oriental**

Defendant moves for summary judgment on Plaintiffs Joanne Torres Rivera ("Torres-Rivera") and Jannet Rodriguez-Rivera's ("Rodriguez-Rivera") Law 80 claims alleging that they voluntarily resigned and were never wrongfully dismissed. Torres Rivera and Rodriguez-Rivera counter that their resignation was not voluntary; rather, that it amounted to a constructive discharge. "Constructive discharge is a label for treatment so hostile or degrading that no reasonable employee would tolerate continuing in the position." Torres-Alman v. Verizon Wireless Puerto Rico, Inc., 522 F. Supp. 2d 367, 395 (D.P.R. 2007).

However, *nothing* on the record suggests that Torres-Rivera and Rodriguez-Rivera suffered any hostile treatment that would support a finding of constructive discharge. Thus, there being no genuine issue of material fact, the Court grants the moving party's summary judgment regarding these claims.

**(4) José D. Tirado-Sierra's Employment Termination with Oriental**

José Tirado-Sierra ("Tirado-Sierra") became a regular employee of Oriental after his probationary employment concluded

on October 29, 2010. On December 16, 2010, he was dismissed for alleged violations of Oriental's policies.

Oriental claims that Tirado-Sierra was granting loans in his personal capacity to employees of Oriental during working hours, in violation of Oriental's Code of Ethics and Conduct. (Docket 30-1 ¶ 21; Docket 30-9; and Docket 30-4 at ¶ 17). Tirado-Sierra denies such allegations and states that he simply helped co-worker Ruth Ferreira during a personal emergency by lending her money. Later on, as Tirado-Sierra stresses, she handed him a check as repayment, and he cashed it. (Docket 38 page 17; Docket 38-5).

The issue at hand is whether there was just cause in the dismissal of Tirado-Sierra, on account of what Oriental categorizes as a single violation of Oriental's Code of Ethics of Conduct. After careful review, the Court understands that the circumstances surrounding his dismissal, as briefed in the motion for summary judgment and its response, admit different interpretations of what happened. The Court is not satisfied that the record is sufficiently clear and/or developed so as to justify a grant of summary judgment on the matter.

## Conclusion

As a result of the aforementioned, the Court **GRANTS** in part and **DENIES** in part Oriental's Motion for Summary Judgment. In

respect to Tirado-Sierra's Law 80 claim, summary judgment is **DENIED**; for all other claims, summary judgment is **GRANTED**.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 13th day of December, 2012.

 

             <u>S/ Jay A. Garcia-Gregory</u>
             JAY A. GARCIA-GREGORY
             United States District Judge